1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RICHARD JULIUS DONALDSON,              No.  2:21-cv-1178 KJN P

12                Plaintiff,

13         v.                               ORDER

14   MERRICK GARLAND, et al.,

15                Defendants.

16

17         Plaintiff is a federal prisoner, proceeding pro se.  Plaintiff filed a civil rights action

18   pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388

19   (1971), including claims under the Federal Tort Claims Act, and requested leave to proceed in

20   forma pauperis pursuant to 28 U.S.C. § 1915.  This proceeding was referred to this court by Local

21   Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

22         Plaintiff submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a).

23   Accordingly, the request to proceed in forma pauperis is granted.

24         Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28 U.S.C.

25   §§ 1914(a), 1915(b)(1).  By this order, plaintiff is assessed an initial partial filing fee in

26   accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will direct

27   the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and

28   forward it to the Clerk of the Court.  Thereafter, plaintiff is obligated to make monthly payments

1   of twenty percent of the preceding month's income credited to plaintiff's trust account.  These

2   payments will be forwarded by the appropriate agency to the Clerk of the Court each time the

3   amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C.

4   § 1915(b)(2).

5          As discussed below, plaintiff's complaint is dismissed with leave to amend.

6   I.  Screening Standards[1]

7          The court is required to screen complaints brought by prisoners seeking relief against a

8   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

9   court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

10  "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

11  monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

12         A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

13  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

14  Cir. 1984).  The court may, therefore, dismiss a claim as frivolous when it is based on an

15  indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

16  490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

17  pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

18  Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir.

19  2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably

20  meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at

21  1227.

22         Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain

23  statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

24  defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic

25  Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

26  ───────────────

27  [1]  The cases cited in this subsection address the standards for actions under 42 U.S.C. § 1983, which also apply to Bivens actions.  See Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991)

28  ("Actions under § 1983 and those under Bivens are identical save for the replacement of a state actor under § 1983 by a federal actor under Bivens.").

1   In order to survive dismissal for failure to state a claim, a complaint must contain more than "a

2   formulaic recitation of the elements of a cause of action;" it must contain factual allegations

3   sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555.

4   However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the

5   defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v.

6   Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal

7   quotations marks omitted).  In reviewing a complaint under this standard, the court must accept as

8   true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the

9   pleading in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236

10  (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

11          Causal Connection

12          An individual defendant is not liable for a civil rights claim unless the facts establish the

13  defendant's personal involvement in the constitutional deprivation or a causal connection between

14  the defendant's wrongful conduct and the alleged constitutional deprivation.  Hansen v. Black,

15  885 F.2d 642, 646 (9th Cir. 1989); Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978).  That

16  is, plaintiff may not sue any official on the theory that the official is liable for the unconstitutional

17  conduct of his or her subordinates.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

18          "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must

19  plead that each Government-official defendant, through the official's own individual actions, has

20  violated the Constitution."  Iqbal, 556 U.S. at 676.  The prisoner must allege "factual content that

21  allows the court to draw the reasonable inference that the defendant is liable for the misconduct

22  alleged," Iqbal, 556 U.S. at 678, and describe personal acts by an individual defendant that shows

23  a direct causal connection to a violation of specific constitutional rights, Taylor v. List, 880 F.2d

24  1040, 1045 (9th Cir. 1989).

25  II.  Plaintiff's Allegations

26          On March 14, 2017, while lifting a bag of books at work in the education department at

27  FCI Herlong, plaintiff felt/heard a pop sound with jolt of pain through his right shoulder.

28  Following the completion of an injury report, plaintiff was sent to medical where he received an

3

x-ray from defendant Girten and medical evaluation from defendant Tabor, who told plaintiff to buy pain medications at the commissary.  On March 27, 2017, plaintiff, still in pain, was seen for follow-up and informed that the x-ray results were negative, but that an MRI was needed to diagnose the injury.  By May, plaintiff still had not received an MRI.  On May 15, 2017, plaintiff returned to sick call complaining of shoulder pain.  Plaintiff was again told to buy pain medications at the commissary, and defendant Tabor said he had no idea when plaintiff would be scheduled for an appointment.  By August, plaintiff still had not received an MRI, and in response to his email was informed it had not yet been scheduled.  Plaintiff filed an administrative grievance in December; defendant Williams responded that plaintiff was "scheduled."  By January, plaintiff still had no MRI, and continued with his administrative grievance.  On March 1, 2018, plaintiff received defendant Warden Salazar's response that plaintiff's medical records showed plaintiff was scheduled to have an MRI.

Plaintiff did not receive an MRI until September 10, 2018; plaintiff had suffered a torn rotator cuff.  On December 10, 2018, plaintiff received a surgical consult, and surgery was recommended to repair the damage.  On December 28, 2018, Dr. Allred placed an order for the recommended surgery, which was scheduled for February 11, 2019.  However, on February 11, 2019, plaintiff was not taken for surgery.  Rather, plaintiff alleges that defendant Potichkin interfered, claiming plaintiff's safety was at risk due to his potentially serving as a state witness.  On February 18, 2019, Potichkin told plaintiff such risk required plaintiff's immediate transfer away from FCI Herlong, and the surgery would have to be cancelled.  Plaintiff alleges that defendant Tuttle cancelled the surgery at the request of defendant Potichkin.  (ECF No. 1 at 18.)

Plaintiff was transferred away from Herlong on June 12, 2019.

On February 21, 2019, plaintiff was called to medical where defendant Williams presented a document entitled "Medical Treatment Refusal," and told plaintiff he had to sign the document.  Plaintiff objected that he wasn't refusing medical treatment, and Williams responded that the surgery had already been cancelled by plaintiff's superiors, so it did not matter whether plaintiff signed or not.  Plaintiff admits he read and signed the document to avoid being uncooperative.  However, plaintiff subsequently discovered that someone altered the document

4

after plaintiff signed it, adding information claiming that defendant Girten had counseled plaintiff about the consequences and complications of refusing recommended treatment, despite the fact that no such counseling was provided, Girten did not sign the form, and Girten was not present with plaintiff on February 21, 2019.

Plaintiff pleads eight counts:

Bivens claims:  (1) medical malpractice (defendants Dr. Allred; Health Services Administrator Tuttle; and PA Tabor; (2) deliberate indifference (defendants Tuttle; Dr. Allred; PA Tabor; Warden Salazar; SIS Lt. Potichkin; (3) cruel and unusual punishment (Dr. Allred; Tuttle, PA Tabor; Lt. Potichkin; Williams; Girten; and Warden Salazar; (4) intentional infliction of emotional distress (defendants Tuttle, Tabor and Potichkin); and (5) due process violation of Fourteenth Amendment (defendants Williams and Girten);

FTCA tort claims (defendant United States of America):  (6) medical negligence; (7) cruel and unusual punishment; and (8) deliberate indifference.

Plaintiff seeks money damages, compensatory and punitive.

III.  Plaintiff's Tort Claims Under the FTCA

In counts six, seven and eight, plaintiff alleges negligence, cruel and unusual punishment and deliberate indifference.  (ECF No. 1 at 24.)  Plaintiff claims that the United States of America is properly named as the defendant in Counts 6 through 9.[2]  (ECF No. 1 at 26.)

A.  Exhaustion of Torts Claims

The Federal Torts Claims Act ("FTCA") provides the exclusive remedy for torts committed by federal employees.  28 U.S.C. § 1346 (b)(1); see Pereira v. U.S. Postal Serv., 964 F.2d 873, 876 (9th Cir. 1992) (FTCA provides waiver of sovereign immunity only if such torts committed by private person would have given rise to liability under state law).  Under the FTCA, an aggrieved party must timely file an administrative claim with the appropriate federal agency before commencing litigation against the United States.  See Blain v. United States, 552

---

[2]  Although plaintiff refers to a "count 9," no count 9 is pled.  (ECF No. 1, *passim*.)  In the amended complaint, if plaintiff renews his tort claims, plaintiff should name the United States as a defendant in the caption and defendant section (not Merrick Garland).

1   F.2d 289 (9th Cir. 1977); 28 U.S.C. § 2675(a); 28 U.S.C. § 2401(b) (tort claim against United

2   States barred unless presented in writing to appropriate Federal Agency within two years after

3   claim accrues).  This requirement is jurisdictional and cannot be waived.  <u>Marley v. United States</u>,

4   548 F.3d 1286, 1287 (9th Cir. 2008); <u>see also</u> <u>Vacek v. United States Postal Serv.</u>, 447 F.3d 1248,

5   1250 (9th Cir. 2006) (exhaustion requirement jurisdictional and must be interpreted strictly).

6       To state a cognizable claim pursuant to the FTCA, plaintiff must affirmatively allege the

7   timely filing of an administrative claim.  <u>See</u> <u>McNeil v. United States</u>, 508 U.S. 106, 111 (1993);

8   <u>Munns v. Kerry</u>, 782 F.3d 402, 413 (9th Cir. 2015) (FTCA requires that a claimant first provide

9   written notification of the incident giving rise to the injury, accompanied by a claim for money

10  damages to the federal agency responsible for the injury).  Pursuant to 28 U.S.C. § 2401(b), a

11  claimant must present an administrative claim against the United States to the appropriate federal

12  agency within two years from the time the claim accrues, and he then has six months from the

13  denial of an administrative FTCA claim to file a complaint in federal court.  A claim is timely

14  only if it has been submitted to the appropriate federal agency within two years of its accrual and

15  was filed in federal court within six months of the federal agency's final decision.  <u>See</u> <u>Redlin v.</u>

16  <u>United States</u>, 921 F.3d 1133, 1136 (9th Cir. 2019) (§ 2401(b) contains two "separate timeliness

17  requirements," and a claim is timely only if it complies with both requirements).  However,

18  FTCA's time bars are subject to equitable tolling.  <u>See</u> <u>United States v. Kwai Fun Wong</u>, 575

19  U.S. 402, 420 (2015).

20      Here, plaintiff confirms he exhausted his administrative remedies under the Prison

21  Litigation Reform Act ("PLRA"), and also references the administrative remedy process

22  throughout his pleading, but he fails to plead that he raised each of his federal tort claims brought

23  under the FTCA by filing a timely tort claim with the appropriate federal agency.  28 U.S.C.

24  § 2675(a).  Plaintiff's vague allegations fail to identify his administrative filing with sufficient

25  detail to determine whether his tort claims were timely filed with the appropriate federal agency

26  and were thereafter timely filed with the court.  <u>Redlin</u>, 921 F.3d at 1136.  Rather, his references

27  suggest that plaintiff exhausted his administrative remedies through the prison grievance system,

28  which is different from filing a FTCA tort claim with the appropriate federal agency.  Plaintiff is

1   granted leave to amend to include specific factual allegations as to the timely exhaustion of each

2   of his tort claims brought under the FTCA.

3          B.  Substantive Evaluation of Torts Claims

4          "The FTCA, enacted in 1946, was designed primarily to remove the sovereign immunity

5   of the United States from suits in tort." Levin v. United States, 568 U.S. 503, 506 (2013)

6   (internal quotations omitted).  "The United States can be sued only to the extent that it waives its

7   sovereign immunity from suit." Cervantes v. United States, 330 F.3d 1186, 1188 (9th Cir. 2003);

8   28 U.S.C. § 1346(b)(1).

9          The United States is not liable under the FTCA for constitutional tort claims. FDIC v.

10  Meyer, 510 U.S. 471, 478 (1994).  Rather, "[t]he FTCA waives the federal government's

11  sovereign immunity for tort claims arising out of the negligent conduct of government employees

12  and agencies in circumstances where the United States, if a private person, would be liable to the

13  claimant under the law of the place where the act or omission occurred." Green v. United States,

14  630 F.3d 1245, 1249 (9th Cir. 2011).  "The law of the place in § 1346(b) has been construed to

15  refer to the law of the state where the act or omission occurred.  Thus, any duty that the United

16  States owed to plaintiff[ ] must be found in California state tort law." Delta Sav. Bank v. United

17  States, 265 F.3d 1017, 1025 (9th Cir. 2001) (internal citations and quotation marks omitted).

18         Here, plaintiff includes constitutional claims in counts 6, 7 and 8, alleging violations of

19  the Eighth Amendment and the United States Constitution.  However, under the FTCA, plaintiff

20  may only pursue his negligence claims available under California state law.  Accordingly,

21  plaintiff is granted leave to amend to allege only such tort claims under California law.

22  IV.  Plaintiff's Claims Under Bivens

23         A.  Governing Standards

24         Courts have found that, under certain circumstances, individuals may sue federal officials

25  for damages for constitutional violations. Bivens, 403 U.S. at 388.  A Bivens action is the federal

26  analog to suits brought against state officials under 42 U.S.C. § 1983. Hartman v. Moore, 547

27  U.S. 250, 154 n.2 (2006).  The basis of a Bivens action is some illegal or inappropriate conduct

28  on the part of a federal official or agent that violates a clearly established constitutional right.

7

1   Baiser v. Department of Justice, Office of U.S. Trustee, 327 F.3d 903, 909 (9th Cir. 2003).  "To

2   state a claim for relief under Bivens, a plaintiff must allege that a federal officer deprived him of

3   his constitutional rights."  Serra v. Lappin, 600 F.3d 1191, 1200 (9th Cir. 2010) (citing see

4   Shwarz v. United States, 234 F.3d 428, 432 (9th Cir. 2000).  A Bivens claim is only available

5   against officers in their individual capacities.  Morgan v. U.S., 323 F.3d 776, 780 n.3 (9th Cir.

6   2003); Vaccaro v. Dobre, 81 F.3d 854, 857 (9th Cir. 1996).  "A plaintiff must plead more than a

7   merely negligent act by a federal official in order to state a colorable claim under Bivens."

8   O'Neal v. Eu, 866 F.2d 314, 314 (9th Cir. 1988).

9        Moreover, not all constitutional cases against federal officers for damages may proceed as

10  Bivens claims.  Ziglar v. Abbasi, 137 S. Ct. 1843, 1859-60 (2017).  To date, the Supreme Court

11  has only recognized a Bivens remedy in the context of the Fourth, Fifth, and Eighth Amendments.

12  See Bivens, 403 U.S. 388 (Fourth Amendment prohibition against unreasonable searches and

13  seizures); Davis v. Passman, 442 U.S. 228 (1979) (Fifth Amendment gender-discrimination);

14  Carlson v. Green, 446 U.S. 14 (1980) (Eighth Amendment Cruel and Unusual Punishments

15  Clause for failure to provide adequate medical treatment).  The Supreme Court has recently made

16  clear that "expanding the Bivens remedy is now a disfavored judicial activity," and "consistently

17  refused to extend Bivens to any new context or new category of defendants.  Ziglar, 137 S. Ct. at

18  1857 (citations omitted).

19        If a claim presents a new context in Bivens, then the court must consider whether there are

20  special factors counseling against extension of Bivens into this area.  Ziglar, 137 S. Ct. at 1857.

21  "[T]he inquiry must concentrate on whether the Judiciary is well suited, absent congressional

22  action or instruction, to consider and weigh the costs and benefits of allowing a damages action to

23  proceed."  Id. at 1857-58.  This requires the court to assess the impact on governmental

24  operations system-wide, including the burdens on government employees who are sued

25  personally, as well as the projected costs and consequences to the government itself.  Id. at 1858.

26  In addition, "if there is an alternative remedial structure present in a certain case, that alone may

27  limit the power of the Judiciary to infer a new Bivens cause of action."  Id.

28  ////

1        B. Discussion

2               1. No Official Capacity Claims Under Bivens

3         Plaintiff asserts that many of the defendants are sued in their individual capacities, for

4 actions performed in their official capacities.  He further alleges that the defendants were

5 employees of the federal BOP and were acting in their official capacities.  (ECF No. 1 at 26.)

6 "There is no such animal as a Bivens suit against a public official tortfeasor in his or her official

7 capacity."  Solida v. McKelvey, 820 F.3d 1090, 1094-95 (9th Cir. 2016) (citing Farmer v. Perrill,

8 275 F.3d 958, 963 (10th Cir. 2001)).  Accordingly, to the extent plaintiff attempts to sue any

9 individual defendant in his or her official capacity, such claims are dismissed.

10               2. Medical Malpractice Claims

11         Plaintiff's medical malpractice claims against defendants Dr. Allred, Health Services

12 Administrator Tuttle, and PA Tabor fail because they are pled as Bivens claims.  Plaintiff must

13 allege more than negligent acts by a federal defendant in order to state a cognizable Bivens claim.

14 O'Neal, 866 F.2d at 314.  In other words, a Bivens action can be brought for constitutional

15 violations; the FTCA provides a remedy only for common law torts.  Therefore, plaintiff should

16 not include any negligence allegations as Bivens claims in his amended complaint.

17              3. Eighth Amendment Deliberate Indifference Claims (Medical)

18                  a. Governing Standards

19         The Eighth Amendment prohibits the imposition of cruel and unusual punishment and

20 "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and

21 decency.'"  Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  A prison official violates the Eighth

22 Amendment when he acts with "deliberate indifference" to the serious medical needs of an

23 inmate.  Farmer v. Brennan, 511 U.S. 825, 828 (1994).  "To establish an Eighth Amendment

24 violation, a plaintiff must satisfy both an objective standard -- that the deprivation was serious

25 enough to constitute cruel and unusual punishment -- and a subjective standard -- deliberate

26 indifference."  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other

27 grounds, Peralta v. Dillard, 744 F.3d 1076, 1083 (9th Cir. Mar.6, 2014).

28         "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate

1  must show 'deliberate indifference to serious medical needs.'" <u>Jett v. Penner</u>, 439 F.3d 1091,

2  1096 (9th Cir. 2006) (quoting his requires plaintiff to show (1) "a 'serious medical need' by

3  demonstrating that 'failure to treat a prisoner's condition could result in further significant injury

4  or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the

5  need was deliberately indifferent." <u>Id.</u> (quoting <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th

6  Cir. 1992)) (citation and internal quotations marks omitted), <u>overruled on other grounds by</u> <u>WMX</u>

7  <u>Technologies v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (<em>en banc</em>).

8         Deliberate indifference is established only where the defendant subjectively "knows of

9  and disregards an excessive risk to inmate health and safety." <u>Toguchi v. Chung</u>, 391 F.3d 1051,

10  1057 (9th Cir. 2004) (citation and internal quotation marks omitted).  Deliberate indifference can

11  be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or

12  possible medical need and (b) harm caused by the indifference." <u>Jett</u>, 439 F.3d at 1096 (citation

13  omitted).  Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is

14  either known or so obvious that it should be known") is insufficient to establish an Eighth

15  Amendment violation.  <u>Farmer v. Brennan</u>, 511 U.S. at 836-37 & n.5 (citations omitted).

16         A difference of opinion between an inmate and prison medical personnel -- or between

17  medical professionals -- regarding appropriate medical diagnosis and treatment is not enough to

18  establish a deliberate indifference claim.  <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989);

19  <u>Toguchi</u>, 391 F.3d at 1058.  Additionally, "a complaint that a physician has been negligent in

20  diagnosing or treating a medical condition does not state a valid claim of medical mistreatment

21  under the Eighth Amendment.  Medical malpractice does not become a constitutional violation

22  merely because the victim is a prisoner." <u>Estelle</u>, 429 U.S. at 106.  To establish a difference of

23  opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of

24  treatment the doctors chose was medically unacceptable under the circumstances." <u>Jackson v.</u>

25  <u>McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996).

26  ////

27  ////

28  ////

1          b. Discussion

2          Here, plaintiff's complaint states potentially cognizable Eighth Amendment claims as to

3   defendants PA Tabor, Dr. Tuttle, Dr. Allred and Lt. Potichkin.[3]  Plaintiff should renew such

4   claims in his amended complaint.

5          Plaintiff claims Warden Salazar was deliberately indifferent to plaintiff's serious medical

6   needs by failing to ensure that plaintiff received the MRI in a timely fashion.  However, plaintiff

7   alleges that defendant Salazar was informed of plaintiff's injury through plaintiff's administrative

8   grievance on January 7, 2018, and defendant Salazar responded that plaintiff's MRI was

9   scheduled.  Defendant Salazar could not rectify the delay that had already occurred.  Moreover,

10  plaintiff does not indicate the MRI date to which Salazar referred in the administrative grievance.

11  Because defendant Salazar was the warden, he was not responsible for plaintiff's medical care,

12  and plaintiff provides no additional facts to demonstrate that Salazar was aware of any further

13  delay.  It is unclear whether plaintiff can allege facts demonstrating defendant Salazar was

14  deliberately indifferent based on his role in the administrative grievance process.  Nevertheless,

15  plaintiff is granted leave to amend as to defendant Salazar if he can allege such facts.

16         Also, plaintiff's allegations as to defendant Williams fail to state a cognizable Eighth

17  Amendment claim.  Plaintiff alleges that on December 22, 2017, plaintiff received a response

18  from defendant Williams, a Health Information Technician, stating plaintiff was scheduled for the

19  MRI.  Plaintiff includes no other allegations as to medical treatment or deliberate indifference to

20  plaintiff's serious medical needs as to defendant Williams.  Defendant Williams did sign the

21  Medical Treatment Refusal form as a witness on February 21, 2019, but by then, the surgery

22  scheduled for February 11, 2019 had already been cancelled, allegedly by Dr. Tuttle.  Plaintiff

23  alleges no involvement by defendant Williams in the cancellation of plaintiff's surgery, or any

24  other involvement or responsibility for the medical care of plaintiff.

25         Similarly, plaintiff's allegations as to defendant Girten fail to plausibly demonstrate her

26

27  [3]  As set forth above, the Eighth Amendment cruel and unusual punishment clause is incorporated into the first prong of plaintiff's deliberate indifference claims, plaintiff was not required to separately plead a cruel and unusual punishment count.  Thus, plaintiff's claims in count three are addressed in the deliberate indifference section.

28

11

1    deliberate indifference to plaintiff's serious medical needs.  Defendant Girten performed an x-ray,

2    but otherwise provided no other medical care to plaintiff.  While plaintiff alleges that the Medical

3    Treatment Refusal form was altered after plaintiff signed it, by then, plaintiff's surgery had been

4    cancelled by Dr. Tuttle.  Plaintiff alleges no involvement by defendant Girten in such

5    cancellation.  Moreover, plaintiff alleges that defendant Girten was not present during the

6    February 21, 2019 meeting with defendant Williams, despite the altered form claiming that Girten

7    had counseled plaintiff.  But again, such meeting took place after the surgery was cancelled; thus,

8    no deliberate indifference to serious medical needs can be inferred as to defendant Girten.

9        It does not appear that plaintiff can allege facts demonstrating deliberate indifference to

10   plaintiff's serious medical needs by either defendant Williams or Girten, but in an abundance of

11   caution, plaintiff is granted leave to amend should he be able to plead such facts.

12                          4.  Due Process Claim

13       Plaintiff alleges that defendants Williams and Girten violated plaintiff's Fourteenth

14   Amendment due process rights by altering the Medical Treatment Refusal form.  However,

15   making false statements is not a due process violation.  See Hines v. Gomez, 108 F.3d 265, 268–

16   69 (9th Cir. 1997) ("there are no procedural safeguards protecting a prisoner from false retaliatory

17   accusations"); Johnson v. Felker, 2013 WL 6243280, at *6 (E.D. Cal. 2013) ("Prisoners have no

18   constitutionally guaranteed right to be free from false accusations of misconduct, so the mere

19   falsification of a report does not give rise to a claim under section 1983.") (citing Sprouse v.

20   Babcock, 870 F.2d 450, 452 (8th Cir. 1989)).[4]  Plaintiff should not renew his due process claims

21   in his amended complaint.

22   ////

23

24   _____

     [4]  To the extent plaintiff attempts to rely on alleged false statements to state a claim for a
25   conspiracy to violate his constitutional rights, he fails to do so.  To state such a claim, a plaintiff
     must allege facts sufficient to show the existence of the claimed conspiracy and show an actual
26   deprivation of those constitutional rights.  Iqbal, 556 U.S. at 678-80; Crowe v. Cnty. of San
     Diego, 608 F.3d 406, 440 (9th Cir. 2010); Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010).
27   Because plaintiff cannot state a colorable due process claim based on false accusations, he
     necessarily cannot state a related colorable conspiracy claim.
28

                                        12

1             5.  Intentional Infliction of Emotional Distress Claim

2        In count 4, plaintiff pleads the intentional infliction of emotional distress by defendants

3 Tuttle, Tabor and Potichkin as a <u>Bivens</u> claim.  However, as explained above, <u>Bivens</u> governs

4 only constitutional violations.  While the intentional infliction of emotional distress is a tort,

5 plaintiff did not raise this allegation as a tort claim under the FTCA, and it is unclear whether

6 plaintiff exhausted such allegation in a tort claim submitted to the appropriate federal agency, as

7 discussed above.

8        Moreover, even if plaintiff exhausted such claim under the FTCA, his allegations remain

9 insufficient.[5]  Under California law, the elements of a prima facie case of intentional infliction of

10 emotional distress are:  "(1) extreme and outrageous conduct by the defendant with the intention

11 of causing, or reckless disregard of the probability of causing, emotional distress; (2) the

12 plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation

13 of the emotional distress by the defendant's outrageous conduct."  <u>Corales v. Bennett</u>, 567 F.3d

14 554, 571 (9th Cir. 2009); <u>Hughes v. Pair</u>, 46 Cal. 4th 1035, 1050, 95 Cal. Rptr. 3d 636, 651

15 (2009).  The courts have set a "high bar" for establishing emotional distress.  <u>Hughes</u>, 46 Cal. 4th

16 at 1051.  "Severe emotional distress means 'emotional distress of such substantial quality or

17 enduring quality that no reasonable [person] in civilized society should be expected to endure it.'"

18 <u>Id.</u>

19        Here, plaintiff states, in conclusory fashion, that such defendants' extreme and outrageous

20 conduct was with the direct intention or reckless disregard of the probability of causing emotional

21 distress.  But merely reciting the elements of the cause of action is inadequate.  <u>Bell Atlantic</u>, 550

22 U.S. at 555.  Plaintiff must point to specific facts that demonstrate each defendant's extreme and

23 outrageous conduct taken with the specific intent to inflict such distress.  Plaintiff does not do so;

24 rather, he points to the delay in treatment, and simply incorporates his prior factual allegations.

25 For example, plaintiff alleges that defendant Potichkin insisted the surgery had to be cancelled for

26

27

28

---

[5]  While certain torts are excluded from the FTCA as a matter of law under 28 U.S.C. § 2680(h), the Ninth Circuit has held that "the tort of intentional infliction of emotional distress is not excluded." <u>Sheehan v. United States</u>, 896 F.2d 1168, 1172 (9th Cir. 1990), <u>as amended</u>, 917 F.2d 424 (9th Cir. 1990).

1  plaintiff's safety and security based on his potential testimony as a state's witness.  Such action

2  does not demonstrate that Potichkin acted with the intention of inflicting emotional distress on

3  plaintiff, and plaintiff does not allege that the safety concern was not legitimate.

4    Plaintiff must also provide factual support to demonstrate he suffered severe emotional

5  distress as defined under California law.  Plaintiff claims he "endured extensive distress, pain and

6  suffering, and mental anguish" as a result of the cancellation of the surgery, but such

7  generalizations provide insufficient factual support to demonstrate emotional distress of

8  substantial or enduring quality.  See Hughes, 46 Cal.4th at 1051 ("[P]laintiff's assertions that she

9  ha[d] suffered discomfort, worry, anxiety, upset stomach, concern, and agitation as the result of

10  defendant's comments to her . . . [did] not comprise emotional distress of such substantial quality

11  or enduring quality that no reasonable [person] in civilized society should be expected to endure

12  it.") (alterations in original; internal quotations and citations omitted).

13    In an abundance of caution, plaintiff is granted leave to amend should he be able to

14  demonstrate exhaustion of such claims, and plead facts meeting each element required under

15  California law.

16  V.  Leave to Amend

17    As set forth above, the complaint must be dismissed.  The court will, however, grant leave

18  to file an amended complaint.

19    If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions

20  about which he complains resulted in a deprivation of plaintiff's constitutional rights.  See, e.g.,

21  West v. Atkins, 487 U.S. 42, 48 (1988).  Also, the complaint must allege in specific terms how

22  each named defendant is involved.  Rizzo v. Goode, 423 U.S. 362, 371 (1976).  There can be no

23  liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a

24  defendant's actions and the claimed deprivation.  Rizzo, 423 U.S. at 371; May v. Enomoto, 633

25  F.2d 164, 167 (9th Cir. 1980).  Furthermore, vague and conclusory allegations of official

26  participation in civil rights violations are not sufficient.  Ivey v. Bd. of Regents, 673 F.2d 266,

27  268 (9th Cir. 1982).

28    In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to

make plaintiff's amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This requirement exists because, as a general rule, an amended complaint supersedes the original complaint.  See Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" (internal citation omitted)).  Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

In accordance with the above, IT IS HEREBY ORDERED that:

1.  Plaintiff's request for leave to proceed in forma pauperis is granted.

2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the Warden or designee, Federal Correctional Institution, Forrest City Medium, filed concurrently herewith.

3.  Plaintiff's complaint is dismissed.

4.  Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Amendment and submit the following documents to the court:

a.  The completed Notice of Amendment; and

b.  An original of the Amended Complaint.

Plaintiff's amended complaint shall comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice.  The amended complaint must also bear the docket number assigned to this case and must be labeled "Amended Complaint."

Failure to file an amended complaint in accordance with this order may result in the dismissal of this action.

////

////

////

15

1        5.  The Clerk of the Court shall send plaintiff the form for filing a civil rights action by a

2    prisoner.

3    Dated:  December 6, 2021

4

5    KENDALL J. NEWMAN
     UNITED STATES MAGISTRATE JUDGE

6    /dona1178.14n

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8                               UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11     RICHARD JULIUS DONALDSON,                     No.  2:21-cv-1178 KJN P

                    Plaintiff,
12

13          v.                                       NOTICE OF AMENDMENT

14     MERRICK GARLAND, et al.,

                    Defendant.
15

16

17          Plaintiff hereby submits the following document in compliance with the court's order

18     filed_____.

                    _____          Amended Complaint
19     DATED:

20

21                                                   _____
                                                     Plaintiff
22

23

24

25

26

27

28