RICHARD JULIUS DONALDSON REG#:16787-040
Name and Prisoner/Booking Number

FCI FORREST CITY-MEDIUM
Place of Confinement

PO BOX 3000/ 1400 DALE BUMPERS RD.
Mailing Address

FORREST CITY, ARKANSAS 72336
City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.)

# FILED

### JAN 07 2022

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

BY _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD JULIUS DONALDSON,
(Full Name of Plaintiff)

Plaintiff,

v.

(1) UNITED STATES OF AMERICA ET, AL.,
(Full Name of Defendant)

(2) AND OTHERS,,,

(3) _____

(4) _____

Defendant(s).

XX Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. 2:21-cv-1178 KJN (PC)
(To be supplied by the Clerk)

## CIVIL RIGHTS COMPLAINT
## BY A PRISONER

☐ Original Complaint
☒ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ☐ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☒ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).
   ☐ Other: _____

2. Institution/city where violation occurred: FCI HERLONG- HERLONG, CALIFORNIA .

## ADDITIONAL DEFENDANTS

<u>2</u>. DR. D. ALLRED, CLINICAL DIRECTOR AT FCI HERLONG.

3. J. TUTTLE, HEALTH SERVICES ADMINISTRATOR AT FCI HERLONG.

4. TIMOTHY TABOR, PHYSICIAN'S ASSISTANT AT FCI HERLONG.

5. LIEUTENANT POTICHKIN, SIS LIEUTENANT AT FCI HERLONG

## B. DEFENDANTS

1. Name of first Defendant: UNITED STATES OF AMERICA . The first Defendant is employed as:
DEPARTMENT OF JUSTICE at .
               (Position and Title)                                    (Institution)

2. Name of second Defendant: DR. D. ALLRED . The second Defendant is employed as:
CLINICAL DIRECTOR at FCI HERLONG .
               (Position and Title)                                    (Institution)

3. Name of third Defendant: J. TUTTLE . The third Defendant is employed as:
HEALTH SERVICES ADMINISTRATOR at FCI HERLONG .
               (Position and Title)                                    (Institution)

4. Name of fourth Defendant: TIMOTHY TABOR . The fourth Defendant is employed as:
PHYSICIAN'S ASSISTANT at FCI HERLONG .
               (Position and Title)                                    (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?      ☒ Yes     ☐ No

2. If yes, how many lawsuits have you filed? (1) . Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: RICHARD JULIUS DONALDSON v. MERRICK GARLAND ET, AL.
      2. Court and case number: 2:21-cr-00034 LPR PSH .
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) CASE IS STILL
      PENDING.

   b. Second prior lawsuit:
      1. Parties: v.
      2. Court and case number: .
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)

   c. Third prior lawsuit:
      1. Parties: v.
      2. Court and case number: .
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

## D.  CAUSE OF ACTION

### CLAIM I

1.   State the constitutional or other federal civil right that was violated: <u>EIGHTH AMENDMENT-</u>
<u>DELIBERATE INDIFFERENCE</u>.

2.   **Claim I.**  Identify the issue involved.  Check **only one**.  State additional issues in separate claims.
- ☐ Basic necessities
- ☐ Mail
- ☐ Access to the court
- ☒ Medical care
- ☐ Disciplinary proceedings
- ☐ Property
- ☐ Exercise of religion
- ☐ Retaliation
- ☐ Excessive force by an officer
- ☐ Threat to safety
- ☐ Other: _____.

3.   **Supporting Facts.**  State as briefly as possible the FACTS supporting Claim I.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.
   <u>FAILURE TO PROVIDE ADEQUATE MEDICAL CARE IN A TIMELY, PROFESSIONAL, AND</u>
   <u>MEDICALLY ACCEPTABLE MANNER. (SEE ATTACHED DOCUMENT "AMENDED COMPLAINT")</u>.

4.   **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).
   <u>PLAINTIFF HAS BEEN SUBJECTED TO UNNECESSARY AND WANTON PAIN & SUFFERING</u>
   <u>FOR AN EXTENSIVE PERIOD OF TIME; SUBJECTING HIM TO MENTAL ANGUISH, EMO-</u>
   <u>TIONAL DISTRESS AS A RESULT OF NOT RECEIVING ADEQUATE TREATMENT.</u>

5.   **Administrative Remedies:**
   a.   Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☒ Yes   ☐ No
   b.   Did you submit a request for administrative relief on Claim I?   ☒ Yes   ☐ No
   c.   Did you appeal your request for relief on Claim I to the highest level?   ☒ Yes   ☐ No
   d.   If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____
   _____.

3

## CLAIM II

1. State the constitutional or other federal civil right that was violated: <u>EIGHTH AMENDMENT-</u>
<u>CRUEL AND UNUSUAL PUNISHMENT</u>.

2. **Claim II.** Identify the issue involved. Check **only one**. State additional issues in separate claims.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☒ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.
   <u>FAILURE TO PROVIDE ADEQUATE MEDICAL CARE IN A TIMELY, PROFESSIONAL, AND</u>
   <u>MEDICALLY PROFESSIONAL MANNER. (SEE ATTACHED DOCUMENT "AMENDED COMPLAINT")</u>.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   <u>PLAINTIFF HAS BEEN SUBJECTED TO UNNECESSARY AND WANTON PAIN & SUFFERING</u>
   <u>FOR AN EXTENSIVE PERIOD OF TIME; SUBJECTING HIM TO CRUEL & UNUSUAL PUN-</u>
   <u>ISHMENT, AS A RESULT OF INJURY BEING LEFT UNTREATED.</u>

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Claim II? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Claim II to the highest level? ☒ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

4

## CLAIM III

1.   State the constitutional or other federal civil right that was violated: <u>FTCA (FEDERAL TORT CLAIMS</u> <u>ACT) NEGLIGENCE</u>.

2.   **Claim III.** Identify the issue involved.  Check **only one**.  State additional issues in separate claims.
   ☐ Basic necessities        ☐ Mail            ☐ Access to the court     ☒ Medical care
   ☐ Disciplinary proceedings ☐ Property        ☐ Exercise of religion    ☐ Retaliation
   ☐ Excessive force by an officer  ☐ Threat to safety  ☐ Other: _____.

3.   **Supporting Facts.**  State as briefly as possible the FACTS supporting Claim III.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.
   <u>FAILURE TO PROVIDE ADEQUATE MEDICAL CARE IN A TIMELY, PROFESSIONAL, AND</u>
   <u>MEDICALLY ACCEPTABLE MANNER. (SEE ATTACHED DOCUMENT "AMENDED COMPLAINT")</u>.

4.   **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).
   <u>PLAINTIFF HAS BEEN SUBJECTED TO UNNECESSARY AND WANTON PAIN & SUFFERING</u>
   <u>FOR AN EXTENSIVE PERIOD OF TIME; SUBJECTING HIM TO CRUEL & UNUSUAL PUN-</u>
   <u>ISHMENT, DELIBERATE INDIFFERENCE AS A RESULT OF INADEQUATE MEDICAL CARE</u>.

5.   **Administrative Remedies.**
   a.   Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☒ Yes  ☐ No
   b.   Did you submit a request for administrative relief on Claim III?   ☒ Yes  ☐ No
   c.   Did you appeal your request for relief on Claim III to the highest level?   ☒ Yes  ☐ No
   d.   If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____.

**If you assert more than three Claims, answer the questions listed above for each additional Claim on a separate page.**

5

## E.  REQUEST FOR RELIEF

State the relief you are seeking:

PLAINTIFF IS SEEKING COMPENSATORY AND PUNITIVE DAMAGES IN AN AMOUNT TO
BE PROVEN AND DETERMINED AT TRIAL.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __DECEMBER 27, 2021__
                        DATE                                                                          SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
_____
_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.  If you need more space you may attach more pages, but you are strongly encouraged to limit your complaint to twenty-five pages.  If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages. Remember, there is no need to attach exhibits to your complaint.

TRULINCS  16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

--------------------------------------------------------------------------------------------------

FROM: 16787040

SUBJECT: Part 1:
DATE: 12/15/2021 09:24:43 AM

## AMENDED COMPLAINT
### (PG 7)

Plaintiff, Richard Julius Donaldson, representing himself pro se, alleges as follows:

1.) This action is being brought before this Court for the violation of Plaintiff's constitutional rights under the Eighth Amendment of the United States Constitution and under the Federal Tort Claims Act (FTCA), in association with negligent actions in the treatment of Plaintiff's injury which he sustained while in the custody of the Federal Bureau of Prisons.

2.) Plaintiff seeks compensatory and punitive damages in an amount to be determined at trial.

3.) Plaintiff Richard Julius Donaldson (hereinafter "Plaintiff"), is, and at all times relevant to this litigation, was an incarcerated inmate at Federal Correctional Institution Herlong, located in Herlong, California. Plaintiff is currently incarcerated at Federal Correctional Institution-Forrest City, located in Forrest City, Arkansas.

4.) Defendant United States of America, is, and at all times relevant to this litigation, head of the Department of Justice to the United States of America, which oversees the Federal Bureau of Prisons. The United States is being sued in their official capacity.

5.) Defendant Dr. D. Allred, M.D., is, and at all times relevant to this litigation, was/is a licensed physician and the Clinical Director for the Health Services Department of the Federal Correctional Institution-Herlong, located in Herlong, California, which is operated by the Federal Bureau of Prisons, under the Department of Justice to the United States of America.

Defendant is being sued in his individual capacity, for actions whereby he failed to promulgate and/or administer procedures, whereby injuries that are serious in nature, and require immediate and/or timely medical attention/action, are adequately handled in a timely, professional, and medically acceptable manner, and in accordance with the proper standard of care as provided pursuant to California law.

Defendant is the Clinical Director of the Health Services Department, and by virtue of this position, is responsible for the acts and omissions of the department's personnel.

6.) Defendant J. Tuttle, is, and at all times relevant to this litigation, was the Health Services Administrator for the Health Services Department of the Federal Correctional Institution-Herlong, located in Herlong, California, which is operated by the Federal Bureau of Prisons, under the Department of Justice to the United States of America.

Defendant is being sued in his individual capacity, for actions whereby he failed to promulgate and/or administer procedures, whereby injuries that are serious in nature and require immediate and/or timely medical attention/action, are adequately handled in a timely, professional, and medically acceptable manner, and in accordance with the proper standard of care as provided pursuant to California law.

7.) Defendant Timothy Tabor, P.A., is, and at all times relevant to this litigation, was a Physician's Assistant in the Health Services Department of the Federal Correctional Institution-Herlong, located in Herlong, California, which is operated by the Federal Bureau of Prisons, under the Department of Justice to the United States of America.

Defendant is being sued in his individual capacity, for actions whereby he failed to provide adequate medical care, for treatment of Plaintiff's injury, in a timely, professional, and medically acceptable manner, and in accordance with the proper standard of care as provided pursuant to California law.

8.) Defendant Potichkin, SIS Lieutenant, is, and at all times relevant to this litigation, was a Special Investigative Services Lieutenant, as part of the Administration Department, of the Federal Correctional Institution-Herlong, located in Herlong, California, which is operated by the Federal Bureau of Prisons, under the Department of Justice to the United States of America.

Defendant is being sued in his individual capacity, for actions whereby he interfered with the administering and/or receiving of Plaintiff's treatment of his serious injury, which required medical attention/action in a timely, professional, and medically acceptable manner, and in accordance with the proper standard of care as provided pursuant to California law.

TRULINCS  16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C
--------------------------------------------------------------------------------------

(PG 8)

Jurisdiction & Venue:

9.) This action arises under the Constitution of the United States of America, & including "Bivens v. Six Unknown Named Fed. Narcotics Agents", 403 U.S. 388 (1971), and the Federal Tort Claims Act (FTCA) 28 U.S.C. 2671-2680. Jurisdiction is conferred upon this court pursuant to 28 U.S.C. 1331 and 1346(b), respectively. Venue in this Court is proper under 28 U.S.C. 1391 and 1402(b) respectively.

Factual Statement:

10.) On March 14, 2017, while working in the Education Department, Plaintiff was performing work duties and attempted to lift a large green duffle bag of books from a cart. While lifting the bag, Plaintiff felt & heard what would be described as a "pop" sound, which also sent a jolt of pain through his right shoulder. The injury was immediately reported to staff member Alan Ripper, Education Tech.

11.) On March 14, 2017, Plaintiff returned to the housing unit & submitted an electronic copout (medical request) regarding the pain he was experiencing from his injury.

12.) On March 15, 2017, Plaintiff received an email response from medical, informing him to submit an injury report through his job.

13.) On March 16, 2017, staff member A. Ripper completed and submitted an injury report and personally called medical and requested for Plaintiff to be seen for his injury. Plaintiff was sent to medical where he first received an x-ray from X-Ray Technician K.Girten, and then a medical evaluation from P.A. Timothy Tabor.

14.) On March 27, 2017, Plaintiff returned to sick-call for a follow-up evaluation with P.A. Tabor. Plaintiff informed Tabor that his shoulder pain was worse than it was at the initial evaluation. Plaintiff reported a pain scale of 7. Though Tabor said that "plaintiff denied pain meds", Tabor told Plaintiff to "purchase pain meds from commissary."

15.) March 27, 2017, x-ray results were returned with negative results. P.A. Tabor informed Plaintiff that he would need an MRI as the next step in diagnosing the extent of his injury.

16.) May 2017, Plaintiff sent an email to medical to follow-up on the status of his MRI scheduling. Plaintiff expressed that his shoulder was in pain and he still hadn't heard anything regarding his pending appointment. The response Plaintiff received stated: "MRI has not been requested." 40+ days had passed since Plaintiff's x-ray results were returned negative and P.A. Tabor had failed to request the necessary MRI.

17.) May 15, 2017, Plaintiff returned to sick-call with shoulder pain. During this appointment, Plaintiff asked Tabor: "Why hadn't he requested an MRI or submitted a request for an appointment?" Tabor said: "Because I have lots of inmates like you with complaints of illnesses & injuries, so maybe I haven't gotten around to it yet." Plaintiff explained to Tabor that his "injury was not just a "complaint", that it was an actual injury." Tabor said: "So is everybody else's, so unfortunately, you're not special." Plaintiff then told Tabor that his shoulder was in pain... Tabor told Plaintiff: "Well I suggest you purchase pain meds from commissary." Again Tabor informed Plaintiff that he would need an MRI, but then stated: "But needing & receiving are two different things" and he had no idea when Plaintiff would actually be scheduled for an appointment.

18.) August 2017, Plaintiff had still not received an MRI nor had he been scheduled for an appointment. Plaintiff sent an email to medical to follow-up on the status. August 21, 2017, Plaintiff received a response stating: "No date scheduled at this time."

19.) December 20, 2017, Plaintiff filed an administrative remedy due to lack of progress with receiving treatment of his injury.

20.) December 22, 2017, Plaintiff received a response from HIT Williams which stated: "You are scheduled."

21.) January 7, 2018, Plaintiff continued with the administrative remedy process because, after 10 months of waiting, Plaintiff had still not received the necessary MRI.

22.) March 1, 2018, Plaintiff received a response to his administrative remedy from Warden Salazar stating: "Your medical record reveals you are scheduled to have MRI completed."

23.) March 14, 2018, Plaintiff had still not received an MRI; Plaintiff began the administrative remedy process again.

TRULINCS 16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

---------------------------------------------------------------------------------------

24.) July 12, 2018, Plaintiff received a response from HSA Tuttle stating: "Records indicate that you have not requested care since June 2017.

NOTE: THIS RESPONSE FROM HSA TUTTLE CAME AFTER THE RESPONSE FROM WARDEN SALAZAR ON MARCH 1, 2018, WHICH STATED: "YOU ARE SCHEDULED TO HAVE AN MRI COMPLETED." FURTHERMORE, PLAINTIFF'S MEDICAL FILE CLEARLY SHOWED THAT PLAINTIFF HAD BEEN CONSISTENTLY PURSUING MEDICAL TREATMENT AFTER INJURY.

25.) Plaintiff spoke with HSA Tuttle in person on numerous occasions. Tuttle began to tell Plaintiff things like: "They don't currently have funding for the MRI truck"... "They don't currently have a contract with a provider for the MRI's"... "We just got funding for the MRI truck, but it broke down when it came"... "The truck came today but they sent the wrong truck". Plaintiff was told these stories over a span of several months. It became overwhelmingly obvious that HSA Tuttle was being malicious & had been telling Plaintiff a vicious cycle of lies, intentionally misleading Plaintiff with his deliberately indifferent actions towards the treatment of Plaintiff's injury.

26.) July 22, 2018, Plaintiff continued the administrative remedy process. At this point, Plaintiff had been waiting 16 months and still had not received an MRI or any form of treatment for his injury. Plaintiff explained that the level of pain had increased and never went away. Plaintiff also explained that his range of motion had decreased and use of his shoulder was more limited.

27.) July 27, 2018, Plaintiff's administrative remedy was rejected and he was told that he could not re-file on the same issue.

28.) September 10, 2018, (18 months after initial injury) Plaintiff was taken to Saint Mary's Regional Medical Center in Reno, Nevada, where he received an MRI. The results were returned positive confirming a torn rotator cuff.

29.) December 10, 2018, Plaintiff was taken to Reno Orthopedic Center in Reno, Nevada, where he received consultation for surgery. During the consultation, the extent of Plaintiff's injury was revealed and surgical intervention was recommended to repair injury. Plaintiff elected to have the surgery.

30.) December 28, 2018, Dr. D. Allred placed an order for the recommended surgery; the surgery was scheduled for February 11, 2019.

31.) February 2019, Plaintiff emailed medical inquiring in regards to the status of the surgery that he was waiting to receive.

32.) February 11, 2019, Plaintiff was not taken for the scheduled surgery.

33.) February 12, 2019, Plaintiff received a response from medical stating: "The surgery is scheduled and pending."

NOTE: ON FEBRUARY 12TH, WHEN PLAINTIFF WAS TOLD THAT THE SURGERY "WAS SCHEDULED AND PENDING", HE WAS CLEARLY BEING MISLEAD BECAUSE THE DATE FOR THE SCHEDULED APPOINTMENT HAD ALREADY PASSED.

34.) February 15, 2019, Unit Case-Managers Rindels & Haussmann, received an email from the 5th District District Attorney's Office, informing them of Plaintiff's involvement (as a witness) in a case that they were working on that was pending trial. The case-managers were informed that the defendant in their case, had been officially informed that Plaintiff was cooperating against him & was a witness for the state. The institution needed to be informed of this because it posed a potential threat to Plaintiff's safety.

35.) February 18, 2019, Plaintiff was called to report to the Lieutenant's office. Upon arrival, SIS Lt. Potichkin informed Plaintiff that: "Due to the potential threat, the pending surgery would have to be cancelled so that Plaintiff could be submitted for immediate transfer."

Plaintiff asked Potichkin: "If there was any alternative that wouldn't require cancellation of a surgery that he had been waiting 23 months to receive?" Potichkin informed Plaintiff: "There were no other options; Plaintiff's safety was more important to the security of the facility." Potichkin then informed Plaintiff that he would speak to HSA Tuttle to cancel the pending surgery.

36.) On February 21, 2019, Plaintiff was called to report to medical. Upon arrival, HIT Williams presented Plaintiff with a document to sign which he stated was in reference to Plaintiff's surgery. Upon reading the document, Plaintiff saw that the document was a "Medical Treatment Refusal" form. Williams encouraged that Plaintiff "had to sign the document"...

TRULINCS 16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

---------------------------------------------------------------------------------

FROM: 16787040                          (PG 10)

SUBJECT: Part 2:
DATE: 12/15/2021 09:41:01 AM

36. (Continued)... Plaintiff responded that he wasn't "refusing any medical treatment"... Williams then informed Plaintiff that "the surgery had already been cancelled by his superiors", "so it didn't really matter if Plaintiff signed the document or not." Plaintiff read & signed the document in order to not be uncooperative with the process.

37.) June 12, 2019, Plaintiff was transferred from Federal Correctional Institution-Herlong and arrived at Federal Correctional Institution-Forrest City on July 22, 2019.

38.) September 25, 2019, Plaintiff requested a copy of his medical record. Upon receiving it, Plaintiff discovered a document that had been altered AFTER he signed it. The "Medical Treatment Refusal" form that HIT Williams had presented to Plaintiff on February 21, 2019.

39.) The document that was now in Plaintiff's file, contained false, misleading, and/or incorrect information that was not present when Plaintiff reviewed and signed the document on February 21, 2019.

The added verbiage stated that: Plaintiff was "Counseled by Krystal Girten" in regards to the "possible consequences, and/or complications of refusing recommended treatment. "I understand the possible consequences and or complications listed above and still refuse treatment." "I hereby assume all responsibility for my physical and/or mental condition, and release the Bureau of Prisons and it's employees from any and all liability for respecting and following my expressed wish and directions." Williams signed as a "witness" to this fraudulent statement and Girten's name was PRINTED in the lower left corner with the date 2/21/2019.

40.) This is false, misleading and fraudulent because at no time throughout the process, was Krystal Girten present; therefore, she could not have "counseled" Plaintiff regarding anything in relation to the cancellation of the pending surgery. Plaintiff is absolutely certain that the additional verbiage was added after Plaintiff signed the document.

The fact that Girten was not present would be supported by camera footage from the date in question; and further supported by the fact that her name was PRINTED on the line where a signature was required, and no signature is present.

41.) Plaintiff asserts that he was not counseled by anyone at anytime regarding refusal of treatment; therefore, the statements of the "Medical Treatment Refusal" form are being represented fraudulently.

42.) On September 27, 2019, Plaintiff submitted an administrative remedy requesting to have the "Medical Treatment Refusal" form removed from his file. Administrative remedy was denied December 19, 2019.

43.) Plaintiff now asserts that he fully exhausted all administrative remedy procedures within the Federal Bureau of Prisons, in an attempt to remedy this situation, as required pursuant to 28 U.S.C. 2675. Administrative remedy FINAL RESPONSE was received on January 14, 2021. Tort Claim was filed/mailed to: Federal Bureau of Prisons- Regional Director; Grand Prairie Office Complex; 344 Marine Forces Drive, Grand Prairie, Texas 75051 on October 1, 2020. Tort claim was then forwarded to Regional Counsel for the Western Region-Bureau of Prisons; 7338 Shoreline Drive, Stockton, California 95219. All Torts to be filed in Bivens/FTCA suit were filed in Tort claim as required pursuant to the FTCA. TORT CLAIM FINAL RESPONSE was received August 20, 2021. Amended claim/suit is being timely filed in December 2021.

Bivens Action-
Count 1: Deliberate Indifference---

44.) Here Plaintiff is alleging that Defendant Tuttle acted with deliberate indifference to his serious medical needs by failing to take the necessary steps to ensure that Plaintiff could receive treatment to his injury in a timely, professional, and medically acceptable manner.

45.) As Health Services Administrator for the Medical Department at FCI Herlong, Tuttle had a professional duty to ensure that the Medical Department was operational and prepared in order to provide adequate medical care/treatment in accordance with the standard of care and conduct set forth by California law. Tuttle further had an obligation to establish and regulate medical procedures whereby Plaintiff would not be susceptible to a substantial risk of serious harm or unnecessary and wanton infliction

TRULINCS 16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

--------------------------------------------------------------------------------

of pain as a result of leaving his injury untreated for an extensive, and medically unacceptable amount of time.

46.) Tuttle was directly informed of the injury suffered by Plaintiff, the substantial risk of suffering serious harm and further injury, and the unnecessary and wanton pain and suffering that Plaintiff would be subjected to from leaving that injury untreated.

47.) Plaintiff asserts that Tuttle was aware of injury because on February 27, 2018, Tuttle reviewed Plaintiff's administrative remedy which outlined the details of Plaintiff's complaint of his injury. After review, Tuttle forwarded a response to Warden, ("You are scheduled to have MRI completed") which was then forwarded to Plaintiff.

48.) After several months passed without receiving an MRI, Plaintiff began the administrative process again on May 14, 2018. Tuttle's response was: "Records show you have not requested care since June of 2017. If your condition persists, care may be accessed via routine institutional procedures."

NOTE: THIS RESPONSE CAME AFTER TUTTLE HAD ALREADY REVIEWED THE ADMINISTRATIVE REMEDY ON FEBRUARY 27TH, WHEN HE INFORMED THE WARDEN THAT PLAINTIFF WAS "SCHEDULED TO HAVE MRI COMPLETED".

49.) Plaintiff spoke to Tuttle on numerous occasions throughout 2018. Tuttle began to tell Plaintiff: "We don't currently have funding for the MRI truck", "We don't have a contract with a provider for the MRI's", "We just got funding for the truck but it broke down when it came"... etc, etc, etc. On one occasion, Tuttle told Plaintiff: "I don't want to hear about your shoulder every time you see me standing out here." After several months of back and forth communication between Plaintiff and Tuttle, it became blatantly obvious that Tuttle was intentionally misleading Plaintiff with his deliberately indifferent actions towards the treatment of Plaintiff's injury.

50.) Plaintiff was forced to endure pain, suffering, mental anguish, and emotional distress for 18+ months before receiving an MRI, then an additional 5 months awaiting surgery which was ultimately cancelled. This was a direct result of Tuttle's failure to establish and regulate medical procedures for the medical department, that would ensure that Plaintiff could receive adequate treatment in a timely, professional, and medically acceptable manner.

Being forced to wait 18+ months with an untreated injury, while waiting for an MRI, was medically unacceptable, & deprived Plaintiff of his Eighth Amendment right to receive adequate medical care. Tuttle's actions contributed to the direct causation of Plaintiff's injury being left untreated for such an extensive amount of time, which subjected Plaintiff to further injury and the unnecessary and wanton pain & suffering which he undoubtedly endured.

51.) Tuttle was fully aware of Plaintiff's injury as well as the amount of time Plaintiff had already been waiting to receive treatment. Tuttle consciously mislead Plaintiff and chose to disregard the excessive risk to Plaintiff's health & the imminent risk that Plaintiff would be susceptible to from leaving his injury untreated.

As a direct result of Tuttle's actions, Plaintiff was forced to endure ongoing pain in his right shoulder which interfered with daily activities such as working, exercise, bathing, writing, sleeping; anything which required regular use or lifting of his shoulder.

52.) Tuttle acted with a sufficiently culpable state of mind as he was aware of the various factors of Plaintiff's injury and still failed to take the necessary steps to abate or resolve this matter.

53.) Here Plaintiff is alleging that defendant Dr. D. Allred acted with deliberate indifference to his serious medical needs by failing to promulgate, organize, or facilitate procedures, whereby medical injuries that are serious in nature, and/or require immediate attention/action, were adequately handled in a timely, professional, and medically acceptable manner, and in accordance with the standard of care and conduct set forth by California law.

54.) As Clinical Director for the Medical Department at FCI Herlong, Dr. Allred was directly responsible for oversight of department procedures associated with scheduling of appointments, reviewing and signing off on patient treatment/care plans, and implementation of department procedures.

55.) Dr. Allred was fully informed of Plaintiff's injury as early as March 29, 2017, @ 8:30am, when he reviewed and signed off on the evaluation completed by defendant Tabor on March 27, 2017. Plaintiff informed Tabor that his "pain was worse than at initial evaluation"; defendant Allred would have undoubtedly seen this notation during his review of Plaintiff's file.

55.5) Throughout the time period that Plaintiff was awaiting treatment, Allred was also aware of the time period for which Plaintiff was awaiting an MRI. Allred reviewed and signed off after evaluations in May and June of 2017, August 2018, and

TRULINCS 16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

--------------------------------------------------------------------------------

again after Plaintiff received MRI on September 10, 2018.

56.) Defendant Allred had a professional obligation as Clinical Director to ensure that proper and effective medical procedures were being carried out in order to ensure that Plaintiff would receive adequate treatment to his injury and not be susceptible to a substantial risk of serious harm or further injury while awaiting treatment. Oversight of scheduling for Plaintiff's treatment was Dr. Allred's direct responsibility.

57.) Plaintiff was forced to endure pain, suffering, mental anguish, and emotional distress for 18+ months as a direct result of Dr. Allred's inability to facilitate a feasible plan to ensure that Plaintiff could receive adequate medical care in a timely, professional, and medically acceptable manner, and in accordance with the proper standard of care and conduct as set forth by California law.

57.5) As a result of Dr. Allred's actions, Plaintiff was forced to endure ongoing pain in his right shoulder, which interfered with daily activities such as working, exercising, bathing, writing, sleeping; anything which required regular use or lifting of shoulder. Allred's actions denied and/or deprived Plaintiff of his Eighth Amendment right to receive adequate medical care.

58.) Allred acted with a sufficiently culpable state of mind as he went along with the undue delays and lack of treatment which was both unprofessional and medically unacceptable. Allred acted with deliberate indifference to Plaintiff's medical needs by failing to take any action towards ensuring that Plaintiff receive the required treatment, and did so with conscious disregard to the imminent risks to Plaintiff's health and potential for suffering further injury.

59.) Here Plaintiff is alleging that defendant Timothy Tabor, P.A., acted with deliberate indifference to his serious medical needs (1) By failing to take the necessary steps to ensure that Plaintiff received adequate medical treatment of his injury, in a timely, professional, and medically acceptable manner... (2) By refusing to prescribe pain medication for Plaintiff's injury... (3) By failing to follow-through with the necessary procedure for scheduling of MRI appointment... (4) For failing to administer or carry out a treatment plan in accordance with the standard of care and conduct as set forth by California law.

60.) As a Physician's Assistant for the Medical Department at FCI Herlong, and Plaintiff's Primary Care provider, Tabor had a professional duty to utilize his skills, prudence, and diligence as other members of his profession would commonly possess and exercise, in the diagnosis and administering of adequate treatment of Plaintiff's injury.

61.) March 27, 2017, Plaintiff was informed by Tabor that x-rays were returned with negatives results. Tabor then informed Plaintiff that an MRI would be the next step in diagnosing the extent of his injury and he would submit a request for the procedure.

62.) May 2, 2017, Plaintiff sent an email to medical to follow-up on the status of the MRI appointment. Plaintiff expressed that his shoulder was in pain and he still hadn't heard anything in regards to the pending appointment.

63.) May 4, 2017, Plaintiff received a response which stated: "Chart reviewed, MRI not indicated and has not been requested." Tabor had failed to request the MRI.

64.) May 15, 2017, Plaintiff returned to sick-call with shoulder pain. During this appointment, Plaintiff asked Tabor: "Why hadn't he submitted a request for the MRI?" Tabor's response was: "Because I have lots of inmates like you with complaints of injuries and illnesses, so maybe I haven't gotten around to it yet."

TRULINCS 16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

---------------------------------------------------------------------------------------------------

FROM: 16787040

(PG 13)

SUBJECT: Part 3:
DATE: 12/20/2021 11:45:17 AM

64.) (Continued)... Plaintiff explained to Tabor that his injury was not just a "complaint", it was an actual injury. Tabor's response was: "So is everybody else's, so unfortunately you're not special." Plaintiff informed Tabor that his shoulder was in pain; Tabor's response was: "Well I suggest you purchase pain meds from commissary." Again, Tabor informed Plaintiff that he would need an MRI... but then said: "But needing and receiving are two different things"... and he had no idea when Plaintiff would be scheduled for or receive an MRI.

NOTE: DURING THIS MEETING, TABOR NOTED POPPING NOISE IN PLAINTIFF'S RIGHT SHOULDER, WHICH HE REFERRED TO AS "CONCERNING" WHEN PLAINTIFF WAS INSTRUCTED TO REACH OVERHEAD.

66.) Tabor refused to prescribe pain medication on numerous occasions and instead told Plaintiff to "purchase pain meds from commissary", while simultaneously writing notes in Plaintiff's medical file stating Plaintiff "refused pain medication."

67.) Tabor breached his duty as a medical professional by failing to take the necessary steps to request an MRI for further diagnosis of Plaintiff's injury, so Plaintiff could receive treatment in a timely, professional, and medically acceptable manner, and in accordance with the standard of care and as set forth by the California Board of Health and appropriate conduct for his profession.

68.) Being forced to wait 18+ months with a torn rotator cuff, while waiting to receive an MRI, was medically unacceptable and denied/deprived Plaintiff Eighth Amendment Constitutional right to receive adequate medical care, while incarcerated in the custody of the Bureau of Prisons. Plaintiff was subjected to further injury and the unnecessary and wanton pain & suffering which he endured as a result.

69.) Tabor acted with a sufficiently culpable state of mind as he contributed to, and/or was the direct causation of the undue delays to Plaintiff's lack of medical treatment. He acted with deliberate indifference to Plaintiff's health and safety by failing to take the necessary action towards ensuring that Plaintiff received the medical treatment which his injury required and did so with conscious disregard to the imminent risk to Plaintiff's health.

70.) Here Plaintiff is alleging that defendant Potichkin, acted with deliberate indifference to Plaintiff's serious medical needs by intentionally interfering in the process of Plaintiff receiving adequate medical treatment to his shoulder injury.

71.) As SIS Lieutenant at FCI Herlong, Potichkin was responsible for managing security within the facility.

72.) In November of 2018, Potichkin was contacted by outside authorities in reference to a case involving Plaintiff, where Plaintiff was set to be a witness in a pending case. The lead detective working the case, contacted the institution to schedule a phone call with Plaintiff. The call was arranged by Potichkin who was also present during the conversation.

73.) February 15, 2019, Unit Case-manager's Rindels & Haussmann received an email from the 5th District District Attorney's office, informing them of Plaintiff's status as a witness in a pending case. The institution needed to be informed of this because it posed a threat to Plaintiff's safety.

74.) February 18, 2019, Plaintiff was called to report to the Lieutenant's office. Potichkin informed Plaintiff that: "due to the potential threat to his safety, the pending surgery would have to be cancelled so Plaintiff could be submitted for immediate transfer."

75.) Plaintiff asked Potichkin: "if there was any alternative that wouldn't require cancellation of a surgery that he had been waiting 23 months to receive?" Potichkin told Plaintiff: "There are no other options; Plaintiff's safety & security were more important to the security of the facility." Plaintiff asked Potichkin: "What about my health?" Potichkin said: "Sacrifices have to be made here, we have to get you transferred." Potichkin then informed Plaintiff that he would speak with HSA Tuttle to cancel the pending surgery.

NOTE: PLAINTIFF DID NOT RECEIVE AN "IMMEDIATE TRANSFER"... PLAINTIFF WAS NOT TRANSFERRED UNTIL 4 MONTHS LATER ON JUNE 12TH 2019; THEREFORE, PLAINTIFF CONTENDS THAT THERE WAS A SUFFICIENT AMOUNT OF TIME TO RECEIVE SURGERY AND STILL BE TRANSFERRED.

TRULINCS  16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

--------------------------------------------------------------------------------

76.) Potichkin acted with deliberate indifference to Plaintiff's serious medical needs by intentionally interfering with Plaintiff's medical treatment by cancelling the pending surgery without Plaintiff's consent. Potichkin was aware of the substantial risk of serious harm that Plaintiff had already been subjected to and the potential for suffering further harm from not receiving the recommended treatment.

Potichkin had been well informed that Plaintiff had endured unnecessary and wanton pain & suffering for 23 months while awaiting treatment of his shoulder injury. Potichkin chose to consciously disregard the risks that Plaintiff would be further subjected to as a result of the cancelled surgery. Potichkin acted with a sufficiently culpable state of mind in his interference of Plaintiff's treatment.

77.) As a result of Potichkin's deliberately indifferent actions, Plaintiff did not receive surgical intervention as recommended by an Orthopedic Surgeon, and was forced to endure pain & suffering, mental anguish, and emotional distress as a direct result of the interference of treatment to his injured shoulder.

Bivens Action:
Count 2: Cruel & Unusual Punishment---

78.) Here Plaintiff alleges that defendant Tuttle subjected him to cruel and unusual punishment with his deliberately indifferent actions to his serious medical needs, by failing to promulgate, organize, or facilitate procedures, whereby Plaintiff could receive treatment to his injury in a timely, professional, and medically acceptable manner, and in accordance with the standard of care and conduct as set forth by California law.

TO ESTABLISH THE BASIS OF CRUEL & UNUSUAL PUNISHMENT AGAINST DEFENDANT TUTTLE, HERE PLAINTIFF REPEATS AND RE-ALLEGES THE ALLEGATIONS AND AVERMENTS OF PARAGRAPHS 44-52 AS IF FULLY STATED HEREIN.

79.) As Health Services Administrator for the Medical Department at FCI Herlong, Tuttle had a professional duty to ensure that the Medical Department was operational and prepared in order to provide adequate medical care in accordance with the standard of care and conduct as set forth by California law. Tuttle further had an obligation to establish and regulate medical procedures whereby Plaintiff would not be susceptible to a substantial risk of serious harm or unnecessary and wanton infliction of pain as a result of leaving his injury untreated for an extensive, and medically unacceptable amount of time.

80.) Tuttle was directly informed of Plaintiff's injury, the substantial risk of suffering serious harm and further injury, and the unnecessary and wanton pain and suffering that Plaintiff would be subjected to as a result of leaving that injury untreated.

81.) Plaintiff asserts that Tuttle was aware of his injury because on February 27, 2018, Tuttle reviewed Plaintiff's administrative remedy, which outlined the details of Plaintiff's complaint of his injury. After review, Tuttle forwarded a response to Warden Salazar, ("You are scheduled to have MRI completed") which was then forwarded to Plaintiff.

82.) After several months passed without Plaintiff receiving an MRI, Plaintiff began the administrative remedy process again on May 14, 2018. Tuttle's response was: "Records show that you have not requested care since June of 2017. If your condition persists, care may be accessed via routine institutional procedures."

NOTE: THIS RESPONSE CAME AFTER TUTTLE HAD ALREADY REVIEWED THE ADMINISTRATIVE REMEDY ON FEBRUARY 27TH, WHEN HE INFORMED THE WARDEN THAT PLAINTIFF WAS "SCHEDULED TO HAVE MRI COMPLETED."

83.) Plaintiff spoke to Tuttle on numerous occasions throughout 2018. Tuttle began to tell Plaintiff: "We don't currently have funding for the MRI truck"... "We don't have a contract with a provider for the MRI's"..."We just got funding for the truck but it broke down when it came"... etc, etc, etc. On one occasion, Tuttle told Plaintiff: "I don't want to hear about your shoulder every time you see me standing out here." After several months of back and forth between Plaintiff and Tuttle, it became blatantly obvious that Tuttle was intentionally misleading Plaintiff with his deliberately indifferent actions towards the treatment of Plaintiff's injury.

84.) Plaintiff was forced to endure pain, suffering, mental anguish, and emotional distress for 18+ months before receiving an MRI, then an additional 5 months awaiting surgery, which was ultimately cancelled. This was a direct result of Tuttle's failure to establish and regulate medical procedures for the medical department, that would ensure that Plaintiff could receive adequate treatment in a timely, professional, and medically acceptable manner.

TRULINCS  16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

--------------------------------------------------------------------------------

Being forced to wait 18+ months with an untreated injury, while awaiting an MRI, was medically unacceptable and subjected Plaintiff to Cruel & Unusual Punishment, in violation of his Eighth Amendment Constitutional right. Tuttle's actions were, and/or contributed to the direct causation of Plaintiff's injury being left untreated for such an extensive period of time, which subjected Plaintiff to further injury and the unnecessary and wanton pain and suffering which he undoubtedly endured.

85.) Tuttle was fully aware of Plaintiff's injury as well as the amount of time Plaintiff had already been waiting to receive treatment. Tuttle consciously mislead Plaintiff and chose to disregard the excessive risk to Plaintiff's health, along with the imminent risk that Plaintiff would be subjected & susceptible to from leaving his injury untreated.

As a direct result of Tuttle's actions, Plaintiff was forced to endure ongoing pain to his right shoulder which interfered with daily activities such as working, exercising, bathing, writing, sleeping; anything which required regular use or lifting of his shoulder

86.) Tuttle acted with a sufficiently culpable state of mind as he was aware of the various factors of Plaintiff's injury and failed to take the necessary action to abate or resolve by seeing that Plaintiff received the required treatment.

87.) Here Plaintiff is alleging that defendant Dr. D. Allred subjected him to cruel & unusual punishment by failing to promulgate, organize, or facilitate procedures whereby medical injuries that are serious in nature, and require immediate or timely attention, were adequately handled in a timely, professional, and medically acceptable manner, and in accordance with the standard or care and conduct as set forth by California law.

88.) As Clinical Director for the Medical Department at FCI Herlong, Dr. Allred was directly responsible for oversight of department procedures associated with scheduling of appointments, reviewing and signing off on patient treatment/care plans, and implementation of department procedures.

89.) Dr. Allred was fully informed of Plaintiff's injury as early as March 29, 2017, @ 8:30am, when he reviewed and signed off on the evaluation that had been completed by defendant Tabor on March 27, 2017. Plaintiff informed Tabor that "his pain was worse than at initial evaluation"; defendant Allred would have undoubtedly seen this notation during his review of Plaintiff's file.

90.) Throughout the time period that Plaintiff was awaiting treatment, Allred was also aware of the time period for which Plaintiff had been awaiting an MRI. Allred reviewed and signed off after ALL evaluations, specifically in May & June of 2017, August of 2018, and again after Plaintiff received an MRI on September 10, 2018.

91.) Defendant Allred had a professional duty as Clinical Director to ensure that proper and effective medical procedures were being carried out in order to ensure that Plaintiff would/could receive adequate treatment to his injury and not be subjected to a substantial risk of serious harm or further injury while awaiting treatment. Oversight of scheduling  was Allred's direct responsibility.

92.) Plaintiff was forced to endure pain, suffering, mental anguish, and emotional distress for 18+ months as a direct result of Allred's inability to facilitate a feasible plan to ensure that Plaintiff could receive the medical care that his injury required, in a timely, professional, and medically acceptable manner, and in accordance with the proper standard of care and conduct as set forth by California law.

Plaintiff was forced to endure ongoing pain to his right shoulder, which interfered with daily activities such as working, exercising, bathing, writing, sleeping; anything which required regular use or lifting of his shoulder.

TRULINCS 16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

--------------------------------------------------------------------------------

FROM: 16787040

(PG 16)

SUBJECT: Part 4:
DATE: 12/21/2021 08:54:16 PM

93.) Allred's actions subjected Plaintiff to Cruel & Unusual Punishment in violation of his Eighth Amendment Constitutional right.

94.) Allred acted with a sufficiently culpable state of mind as he went along with the undue delays and lack of treatment which was both unprofessional and medically unacceptable. Allred's actions were with complete disregard to the imminent risk to Plaintiff' health and potential for suffering further injury.

95.) Here Plaintiff is alleging that defendant Timothy Tabor, P.A., subjected him to Cruel and Unusual Punishment by, but not limited to (1)Failing to take the necessary steps to ensure that Plaintiff received adequate medical treatment to his injury in a timely, professional, and medically accepted manner... (2) Refusing to prescribe pain medication for Plaintiff's injury... (3) Failing to follow through with the necessary procedure for scheduling of MRI appointment which was required as the next step in diagnosing the extent of Plaintiff's injury... (4) Failing to administer or carry out a treatment plan in accordance with the standard of care and conduct as set forth by California law.

TO ESTABLISH THE BASIS OF CRUEL & UNUSUAL PUNISHMENT AGAINST DEFENDANT TABOR, HERE PLAINTIFF REPEATS AND RE-ALLEGES THE ALLEGATIONS AND AVERMENTS OF PARAGRAPHS 59-69

96.) As a Physician's Assistant for the Medical Department at FCI Herlong, and Plaintiff's Primary Care Provider, Tabor had a professional duty to utilize his skills, prudence, and diligence as other members of his profession would commonly possess and exercise, in the diagnosis and administering of adequate treatment of Plaintiff's injury.

97.) March 27, 2017, Plaintiff was informed by Tabor that x-rays were returned with negative results. Tabor then informed Plaintiff that an MRI would be the next step in diagnosing the extent of his injury and he (Tabor) would submit a request for the procedure.

98.) May 2, 2017, Plaintiff sent an email to medical to follow-up on the status of the MRI appointment. Plaintiff expressed that his shoulder was in pain and he still had not heard anything in regards to the pending/scheduling of an appointment.

99.) May 4, 2017, Plaintiff received a response which stated: "Chart reviewed, MRI not indicated and has not been requested. TABOR HAD FAILED TO REQUEST AN MRI.

100.) May 15, 2017, Plaintiff returned to sick-call with shoulder pain. During this appointment, Plaintiff asked Tabor: "Why hadn't he submitted a request for the MRI?" Tabor's response was: "Because I have lots of inmates like you with complaints of illnesses & injuries, so maybe I haven't gotten around to it yet." Plaintiff explained to Tabor that his injury was not just a complaint, it was an actual injury. Tabor said: "So is everybody else's, so unfortunately you're not special." Plaintiff informed Tabor that his shoulder was in pain... Tabor's response was: "Well I suggest you purchase pain meds from commissary." Again, Tabor informed Plaintiff that he would need an MRI... but then said: "But needing and receiving are two different things"; and he said that he had no idea when Plaintiff would receive an MRI.

NOTE: DURING THIS APPOINTMENT, TABOR NOTED "POPPING NOISE" WHICH HE SAID WAS CONCERNING, WHEN PLAINTIFF WAS INSTRUCTED TO REACH OVERHEAD WITH HIS RIGHT SHOULDER.

101.) Tabor refused to prescribe pain medication on numerous occasions and instead told Plaintiff to buy them from commissary, while simultaneously writing notes in Plaintiff's medical file, stating that "Plaintiff refused pain medication."

102.) Tabor breached his duty as a medical professional by failing to take the necessary steps to request and/or schedule an MRI for further evaluation of Plaintiff's injury, so that Plaintiff could receive treatment in a timely, professional, and medically acceptable manner, and in accordance with the standard or care and conduct as set forth by the California board of Health and the laws and policies governing the medical profession.

103.) Being forced to wait 18+ months with a torn rotator cuff while waiting to receive an MRI, was medically unacceptable and subjected Plaintiff to cruel & unusual punishment in violation of his Eighth Amendment rights. Tabor's actions were, and/or contributed to the direct causation of Plaintiff's injury being left untreated for such an extensive period of time. Plaintiff was subjected to unnecessary and wanton pain & suffering which he undoubtedly suffered as a result.

TRULINCS 16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

--------------------------------------------------------------------------------

104.) As a direct result of Tabor's negligent, and deliberately indifferent actions, Plaintiff was forced to endure ongoing pain in his right shoulder which interfered with daily activities such as working, exercising, bathing, sleeping; anything which required regular use or lifting of his shoulder.

105.) Tabor acted with a sufficiently culpable state of mind as his actions were with complete disregard to the imminent risks to Plaintiffs health, and were both unprofessional and medically unacceptable, resulting in Plaintiff being subjected to cruel and unusual punishment.

106.) Here Plaintiff is alleging that defendant Potichkin subjected him to cruel & unusual punishment by intentionally interfering in the process of Plaintiff receiving adequate medical treatment in a timely, professional, and medically acceptable manner, and in accordance with the standard of care and conduct as set forth by California law.

TO ESTABLISH THE BASIS OF CRUEL AND UNUSUAL PUNISHMENT AGAINST DEFENDANT POTICHKIN, HERE PLAINTIFF RE-ALLEGES THE ALLEGATIONS AND AVERMENTS OF PARAGRAPHS 70-77 AS IF FULLY STATED HEREIN.

107.) As SIS Lieutenant at FCI Herlong, defendant Potichkin was responsible for managing security within the facility.

108.) In November of 2018, defendant Potichkin was contacted by outside authorities in reference to a case where Plaintiff was due to be a witness in a pending trial. The lead detective working the case, contacted the institution to schedule a phone call with Plaintiff. The call was arranged by Potichkin who was also present for the conversation.

109.) February 15, 2019, Unit Case-Managers Rindels and Haussmann received an email from the 5th District District Attorney's office, informing them of Plaintiff's status as a witness in their pending case. The institution needed to be informed of this because it posed a threat to Plaintiff's safety.

110.) February 18, 2019, Plaintiff was called to report to the Lieutenant's office. When Plaintiff arrived, Potichkin informed Plaintiff that: "due to the potential threat to his safety, the pending surgery could be cancelled so Plaintiff could be submitted for immediate transfer." Plaintiff asked Potichkin: "if there was any alternative that wouldn't require cancellation of a surgery that he had been waiting 23 months to receive?" Potichkin told Plaintiff: "There are no other options; Plaintiff's safety & security were more important to the security of the facility." Plaintiff asked Potichkin: "What about my health?" Potichkin responded: "Sacrifices have to be made here; we have to get you transferred." Potichkin then informed Plaintiff that he would speak to HSA Tuttle to cancel the surgery.

NOTE: PLAINTIFF DID NOT RECEIVE AN "IMMEDIATE TRANSFER"... PLAINTIFF WAS NOT TRANSFERRED UNTIL 4 MONTHS LATER JUNE 12, 2019; THEREFORE, PLAINTIFF CONTENDS THAT THERE WAS A SUFFICIENT AMOUNT OF TIME TO RECEIVE THE RECOMMENDED SURGERY AND STILL BE TRANSFERRED.

111.) Potichkin subjected and/or contributed to Plaintiff being subjected to cruel & unusual punishment by intentionally interfering with the required treatment; specifically, by cancelling the pending surgery without Plaintiff's consent. Potichkin was aware of the pain & suffering that Plaintiff had and was continually being subjected to, and the substantial risk of suffering further harm as a result of his injury being left untreated.

112.) Potichkin had been well informed that Plaintiff had endured unnecessary and wanton pain & suffering for 23 months while awaiting treatment of his shoulder injury. Potichkin chose to consciously disregard the risks that Plaintiff would be further subjected to as a result of the cancelled surgery. Potichkin acted with a sufficiently culpable state of mind in his interference of Plaintiff's treatment.

113.) As a result of Potichkin's actions, Plaintiff did not receive the required surgical intervention as recommended by an Orthopedic Surgeon, and was forced to endure pain & suffering, mental anguish, and emotional distress as a result of the interference of treatment to his injured shoulder.

FTCA Claim:
Count 3: Negligence---

114.) Here Plaintiff is alleging that defendant United States of America, by and through the actions of it's employees, was negligent in their duty to provide the proper procedures for ensuring that medical injuries that are serious in nature, and require immediate and/or timely action/attention, are handled adequately in a timely, professional, and medically acceptable manner, and in accordance with the proper standard of care and conduct as set forth by California law, and the rights afforded to Plaintiff

TRULINCS 16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

--------------------------------------------------------------------------------

by the Eighth Amendment of the United States Constitution.

TO ESTABLISH THE BASIS OF THIS CLAIM AGAINST DEFENDANT UNITED STATES OF AMERICA, PLAINTIFF REPEATS AND RE-ALLEGES THE ALLEGATIONS AND AVERMENTS IN SUMMARY, OF PARAGRAPHS 10-114, AS IF FULLY STATED HEREIN...

115.) March 16, 2017, Plaintiff sustained an injury to his right shoulder, while working in the Education Department at FCI Herlong. Plaintiff immediately reported his injury to staff member A. Ripper. An injury report was completed and Plaintiff was sent to medical for an evaluation.

116.) Plaintiff received an x-ray from K. Girten and an evaluation from defendant Timothy Tabor.

117.) March 27, 2017, Plaintiff returned to sick-call for a follow-up evaluation where he reported that his shoulder pain "was worse than at initial evaluation." Plaintiff requested pain meds; defendant Tabor told Plaintiff to "purchase pain meds from commissary." Tabor informed Plaintiff that he would need an MRI as the next step in diagnosing his injury.

118.) May 2017, Plaintiff sent an email to medical to follow-up on the status of scheduling of the MRI appointment; The response Plaintiff received was: "MRI has not been requested." 40+ days had passed and Tabor had failed to request the MRI.

119.) May 15, 2017, Plaintiff returned to sick-call with shoulder pain. Plaintiff asked Tabor: "Why hadn't he requested an MRI yet?" Tabor said: "Because I have lots of inmates like you with complaints of illnesses and injuries, so maybe I haven't gotten around to it yet."

120.) August 2017, Plaintiff sent an email to medical to follow-up on the MRI appointment; August 21, 2017, Plaintiff received a response stating: "No date scheduled at this time."

121.) December 20, 2017, Plaintiff filed an administrative remedy due to lack of progress in the process of receiving treatment. December 22, 2017, Plaintiff received a response stating: "You are scheduled."

122.) January 7, 2018, Plaintiff continued to the next step of administrative remedy process.

123.) March 1, 2018, Plaintiff received a response from Warden Salazar stating: "Your medical record reveals that you are scheduled to have the MRI completed."

124.) March 14, 2018, Plaintiff had still not received an MRI so he continued with the administrative remedy process.

125.) July 12, 2018, Plaintiff received a response from defendant Tuttle stating: "Records indicate that you have not requested care since June 2017."

126.) Plaintiff spoke with Tuttle on numerous occasions; Tuttle deliberately mislead Plaintiff regarding the status of the pending MRI scheduling. His actions were malicious and showed deliberate indifference towards Plaintiffs medical needs.

127.) September 10, 2018, (18 MONTHS AFTER INITIAL INJURY), Plaintiff was taken to outside hospital where he received an MRI. The results were positive, confirming a torn rotator-cuff. Plaintiff was forced to endure pain, suffering, mental anguish, and emotional distress for another 3 months before being taken out for surgery consultation on December 10, 2018. The Orthopedic Surgeon recommended surgical intervention to repair injury... Plaintiff opted to receive the surgery!

128.) December 28, 2018, defendant Allred placed an order for the surgery, which was then scheduled for February 11, 2019.

129.) February 11, 2019, Plaintiff was not taken out for the scheduled surgery. Plaintiff emailed medical inquiring in regards to the status of the surgery; the response Plaintiff received stated: "Surgery is scheduled and pending."

TRULINCS 16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

--------------------------------------------------------------------------------

FROM: 16787040

SUBJECT: Part 5:
DATE: 12/22/2021 11:28:56 AM

NOTE: ON FEBRUARY 12TH, WHEN PLAINTIFF WAS TOLD THAT THE SURGERY WAS "SCHEDULED AND PENDING", PLAINTIFF WAS AGAIN BEING MISLEAD/LIED TO BECAUSE THE DATE FOR THE SCHEDULED APPOINTMENT HAD ALREADY PASSED.

130.) February 15, 2019, Unit Case-Manager's Rindels & Haussmann, received an email from the 5th District District Attorney's Office, informing them of Plaintiff's involvement (as a witness) in a case that they were working on that was pending trial. The case-managers were informed that the defendant in their case, had been officially informed that Plaintiff was cooperating against him and was a witness for the state. The institution needed to be informed of this because it posed a potential threat to Plaintiff's safety.

131.) February 18, 2019, Plaintiff was called to report to the Lieutenant's office. Upon arrival, defendant Potichkin informed Plaintiff that: "Due to the potential threat , the pending surgery would have to be cancelled so that Plaintiff could be submitted for immediate transfer."

Plaintiff asked Potichkin: "If there was any alternative that wouldn't require cancellation of a surgery that he had been waiting 23 months to receive?" Potichkin informed Plaintiff: "There were no other options; Plaintiff's safety was more important to the security of the facility." Plaintiff then asked Potichkin: "What about my health?" Potichkin responded: "Sacrifices have to be made here, we have to get you transferred." Potichkin then informed Plaintiff that he would speak to HSA Tuttle to cancel the pending surgery.

132. February 21, 2019, Plaintiff was called to report to medical. Upon arrival, HIT Williams presented Plaintiff with a document to sign which he stated was in reference to Plaintiff's surgery. Upon reading the document, Plaintiff saw that the document was a "Medical Treatment Refusal" form. Williams encouraged that Plaintiff "had to sign the document"... Plaintiff responded that he wasn't "refusing any medical treatment"... Williams then informed Plaintiff that the surgery had already been cancelled by his superiors, so it didn't matter if he signed the document or not." Plaintiff signed the document in order to not be uncooperative with the process.

133.) Plaintiff medical record will show that there is NO REQUEST OF ANY KIND, from the Plaintiff, requesting cancellation of the surgery. The surgery was cancelled by defendant Tuttle at the request of defendant Potichkin.

134.) The Health Services Department at Federal Correctional Institution Herlong, as an institution responsible for providing medical treatment, owed a professional duty to use ordinary care, such as that which would be available for common society, and to furnish the Plaintiff with the necessary treatment that would be generally required by his physical condition and/or injury.

135.) The responsible staff members at the Health Services Department, breached their duties to Plaintiff by failing to ensure that he received the necessary treatment in a timely, professional, and medically acceptable manner, and in accordance with the standard of care and conduct as set forth by California law.

The breach of duties and failures on the part of the Health Services, and administrative member(s), includes: negligence, cruel & unusual punishment, deliberate indifference, and medical malpractice; and was the proximate cause of unnecessary and wanton discomfort, pain & suffering, mental anguish, and emotional distress which Plaintiff undoubtedly endured as a result of their actions & inaction.

136.) The responsible staff members of Health Services and prison administration of FCI Herlong, were/are employees of the Federal Bureau of Prisons, and were acting in their official capacities; therefore, the United States of America is properly named as the defendant in Count 3.

Damages:

137.) Plaintiff seeks compensatory & punitive damages in an amount to be proven and determined at trial.

138.) Plaintiff reserves that right to amend this complaint and further pleadings.

(PG. 20)

TRULINCS 16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

-------------------------------------------------------------------------------

WHEREFORE, PLAINTIFF SEEKS AN AWARD OF COMPENSATORY & PUNITIVE DAMAGES, AND FOR ALL OTHER RELIEF TO WHICH HE IS ENTITLED BY LAW. FURTHERMORE, PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.

Dated this 22nd day of December, 2021                      Richard J. Donaldson

12 - 23 - 2021