UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD JULIUS DONALDSON, | No. 2:21-cv-1178 TLN KJN P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| MERRICK GARLAND, et al., | |
| Defendants. | |

Plaintiff is a federal prisoner proceeding with a civil rights action under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). In his amended complaint, plaintiff included a claim against Lt. Potichkin, alleging that Potichkin interfered with plaintiff's medical care in violation of the Eighth Amendment. As discussed below, the undersigned recommends that plaintiff's Bivens claims against defendant Potichkin be dismissed with prejudice.

Screening Standards

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

1

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

Plaintiff's Allegations

In pertinent part, plaintiff alleges the following. Defendant Potichkin is a Lieutenant with the Special Investigative Services ("SIS"), as part of the Administration Department of the Federal Correctional Institution at Herlong, California ("FCI-Herlong"). (ECF No. 17 at 8.) As SIS Lieutenant, Potichkin was responsible for managing security within the facility. (ECF No. 17 at 14.) In November of 2018, defendant Potichkin was contacted by outside authorities concerning a pending case where plaintiff would be called to provide witness testimony. (ECF No. 17 at 14.) A phone call was scheduled; subsequently, the lead detective spoke with plaintiff and Potichkin by phone. (Id.)

On February 12, 2019, plaintiff was informed that his shoulder surgery had been scheduled. (ECF No. 17 at 10.) On February 15, 2019, case managers received an email from the District Attorney's Office notifying them of plaintiff's involvement as a witness in a case pending

trial. Because plaintiff was cooperating and would serve as a state's witness, the email informed that plaintiff's putative testimony posed a potential threat to plaintiff's safety. (ECF No. 17 at 10, 14.) On February 18, 2019, plaintiff was called to Potichkin's office and told that "due to the potential threat, the pending surgery would have to be cancelled so that plaintiff could be submitted for immediate transfer." (Id.) Plaintiff asked whether there was an alternative because he had waited 23 months to receive the surgery. Potichkin replied: "There were no other options; plaintiff's safety was more important to the security of the facility." (Id.) Plaintiff asked "what about my health," and Potichkin responded, "Sacrifices have to be made here, we have to get you transferred." (ECF No. 17 at 14.) Potichkin told plaintiff that Potichkin would speak to HSA Tuttle to cancel the pending surgery. (ECF No. 17 at 10, 14.)

On February 21, 2019, plaintiff was called to medical, where defendant Williams presented plaintiff with a document to sign regarding plaintiff's surgery. (ECF No. 17 at 11.) Plaintiff was not transferred until June 12, 2019.

Legal Standards Applicable to a Bivens Action

In Bivens, the Supreme Court recognized an implied cause of action under the Constitution for damages against federal officers. Id., 403 U.S. at 389. Since then, the Supreme Court has repeatedly emphasized its reluctance to add claims allowed under Bivens. See Egbert v. Boule, 142 S. Ct. 1793, 1799 (2022) ("Over the past 42 years, however, we have declined 11 times to imply a similar cause of action for other alleged constitutional violations."); Hernandez v. Mesa, 140 S. Ct. 735, 743 (2020) ("[F]or almost 40 years, we have consistently rebuffed requests to add to the claims allowed under Bivens."); Ziglar v. Abbasi, 137 S. Ct. 1843,1857 (2017) ("[T]he Court has made clear that expanding the Bivens remedy is now a "disfavored" judicial activity." (internal citation omitted)). The Court has implied a damages remedy under the Constitution in only three contexts. Abassi, 137 S. Ct. at 1854-55 (citing Bivens, 403 U.S. at 396-97 (Fourth Amendment violation against unreasonable searches and seizures); Carlson v. Green, 446 U.S. at 14, 19 (1980) (Eighth Amendment cruel and unusual punishment for failure to provide adequate medical treatment); Davis v. Passman, 442 U.S. 228, 248-49 (1979) (Fifth Amendment violation of Due Process Clause based on gender discrimination by a congressman)).

3

Indeed, in Egbert, the Court stated that "if we were called to decide Bivens today, we would decline to discover any implied causes of action in the Constitution," and again limited further expansion of Bivens liability.  Egbert, 142 S. Ct. at 1809.

To ascertain whether a cause of action exists under Bivens, courts "engage in a two-step inquiry."  Mesa, 140 S. Ct. at 743.  The first step is to "inquire whether the request involves a claim that arises in a 'new context' or involves a 'new category of defendants.'"  Id. (citation omitted).  If so, the second step is to "ask whether there are any special factors that counsel hesitation about granting the extension."  Id.

A context is new if it is "different in a meaningful way from previous Bivens cases decided by [the Supreme] Court."  Abbasi, 137 S. Ct. at 1859.  The Court in Abbasi did not provide an exhaustive list of differences that are meaningful enough to make a given context new, but noted the following examples:

> [T]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

Abbasi, 137 S. Ct. at 1859-60.  Even if a case has "parallel circumstances" to Bivens, Passman, or Carlson, a "plaintiff cannot justify a Bivens extension" "unless he also satisfies the 'analytic framework' prescribed by the last four decades of intervening case law."  Egbert, 142 S. Ct. at 1809 (quoting Abassi, 137 S. Ct. at 1859).

The Court recently clarified that the two-step process identified in Abassi "often resolve[s] to a single question:  whether there is any reason to think that Congress might be better equipped to create a damages remedy."  Egbert, 142 S. Ct. at 1803.  If "Congress has provided alternative remedies for aggrieved parties in [the plaintiff's] position," including a remedial process that [Congress] finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a Bivens remedy."  Egbert, 142 S. Ct. at 1806, 1807.

Discussion

In Carlson, the prisoner asserted that prison officials, knowing the seriousness of the prisoner's chronic asthma as well as the facility's inadequate medical care and staffing, kept the prisoner in an inadequate facility against doctors' advice, gave him the wrong treatments, failed to provide competent medical attention for almost eight hours, and delayed his transfer to an outside hospital. Id., 446 U.S. at 16 n.1.

Here, plaintiff asserts defendant Potichkin interfered with plaintiff's medical care by cancelling the pending surgery, despite being informed that plaintiff had waited 23 months for the surgery, in violation of the Eighth Amendment. Thus, plaintiff does not assert that Potichkin failed to provide competent medical care, as was the issue in Carlson. Instead, plaintiff claims that Potichkin interfered with plaintiff's medical care by speaking with defendant HSA Tuttle to cancel the pending surgery. Moreover, defendant Potichkin is not a medical provider, rather, Potichkin is a lieutenant charged with security at FCI-Herlong. Such role is not synonymous with providing medical care, and Potichkin holds a different rank or position than the other medical providers named as defendants herein. Therefore, plaintiff's Eighth Amendment claims against defendant Potichkin differ in meaningful ways from those pled in Carlson, and do not present parallel circumstances. See Mesa, 140 S. Ct. at 743. Allowing plaintiff's Bivens claim against defendant Potichkin to proceed in this action would be an unauthorized extension of an Eighth Amendment deliberate indifference claim under Bivens.

As to the second step under Mesa, 140 S. Ct. at 743, a special factor exists because extending Bivens to the facts presented here would interfere with sensitive issues of facility security and prisoner housing decisions. Plaintiff's claims against defendant Potichkin arise from the decision to transfer plaintiff for his own safety. Allowing a claim for personal liability against officers who make housing decisions based on security issues would interfere with the administration of day-to-day housing issues that is best reserved for the Executive Branch. Because this special factor counsels hesitation, the court should decline to extend Bivens to plaintiff's claims against defendant Potichkin.

Finally, "[i]f there are alternative remedial structures in place, "that alone," like any

special factor, is reason enough to "limit the power of the Judiciary to infer a new Bivens cause of action." Egbert, 142 S. Ct. at 1804, quoting Abassi, 137 S. Ct. at 1858.  Here, plaintiff has alternative remedies available to him, including the Bureau of Prisons administrative grievance process and a federal tort claims action.  Moreover, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." Abassi, 137 S. Ct. at 1865.  As noted by the Supreme Court, the Prison Litigation Reform Act ("PLRA") provided no "standalone damages remedy against federal jailers." Abassi, 1137 S. Ct. at 1865.  Thus, "It could be argued that this suggests Congress chose not to extend the Carlson damages remedy to cases involving other types of prisoner mistreatment." Id.  Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new Bivens cause of action arising out of plaintiff's Eighth Amendment claim that defendant Potichkin interfered with plaintiff's medical care.  Thus, the Supreme Court's decision in Egbert forecloses recognizing a Bivens remedy for plaintiff's allegations against defendant Potichkin.

Because plaintiff cannot pursue a claim against defendant Potichkin under Bivens, further leave to amend as to defendant Potichkin is not warranted.

Accordingly, IT IS HEREBY RECOMMENDED that defendant Potichkin be dismissed with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  October 17, 2022

/dona1778.57

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE